THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DIALYSIS CLINIC, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:07-0838 |
| ) | |
| JOSEPH H. LIPUT, STEPHEN COOKSEY, ) | |
| M.D., DAVID J. LEVENSON, M.D. and ) | |
| JAMES WEISS, M.D., ) | |
| ) | |
| Defendants. ) | |
| ) | |

The parties hereby stipulate and agree that the following Amended Agreed Injunction shall be entered as an Agreed Order in the above captioned case.

### AMENDED AGREED PERMANENT INJUNCTION AND FINAL JUDGMENT

The parties have agreed to compromise and resolve this case through the entry of the following permanent injunction as the Final Judgment in this case. The parties acknowledge that entry of such an order is not intended to represent an admission by Defendants of the enforceability of the underlying agreements upon which the suit is based, but rather, such order comes as the result of a voluntary settlement and compromise and so that Defendants may avoid the undue burdens, expenses and costs of litigation. It is therefore, ordered, adjudged, and decreed that:

1. Until December 11, 2009, Dr. Joseph Liput will not make any use for his own benefit, or for the benefit of any person, firm, corporation or other entity, or disclose to any person, firm, corporation or other entity, any secret or confidential information, patient lists or any other data or proprietary information of, or pertaining to, the Dialysis Clinic Inc. ("DCI") dialysis facilities located at 722 Fourth Avenue, New Kensington, Pennsylvania and #7 Park

Industrial Drive, Vandergrift, Pennsylvania ("Liput Facilities") or to their business and financial affairs or services to the extent acquired by him at anytime during the term of his engagement by DCI as a Medical Director and not generally known within the trade or as a matter of public knowledge. Dr. Liput also represents that he has not previously engaged in such conduct other than for the benefit of or to DCI.

2. Until December 11, 2009, Dr. Joseph Liput will also not, alone or as a member of a partnership, or as a stockholder, principal, member or agent of any corporation, partnership, joint venture, person or entity: (i) directly or indirectly, participate in the ownership, management, operation or control of another outpatient renal dialysis facility within a twenty-five (25) mile radius of the location of the Liput Facilities; (ii) serve as Medical Director or hold a management position with another corporation, partnership, person or entity offering services which are competitive of those offered by DCI within a twenty-five (25) mile radius of the location of the Liput Facilities; (iii) influence or attempt to influence any of the suppliers from which DCI, directly or indirectly, purchases goods or services to alter or terminate their business relationship with DCI; (iv) hire or solicit to hire any of the Liput Facilities or DCI's employees or influence or attempt to influence any of the Liput Facilities or DCI's employees to alter or terminate their employment relationship with the Liput Facilities or DCI; or (v) in any other manner interfere with, disrupt or attempt to disrupt the relationship between the Liput Facilities or DCI and any of its employees or suppliers. Dr. Liput also represents that he has not previously engaged in such conduct. The parties acknowledge that the foregoing is not intended in any way to limit Dr. Liput from engaging in the professional practice of medicine or nephrology, nor is it intended to require that Dr. Liput admit patients to the Liput Facilities or restrict Dr. Liput from admitting patients to any other dialysis facility or hospital, nor is it intended to prohibit or in any

way otherwise limit Dr. Liput from charging fees for administering professional medical services to patients admitted to the Liput Facilities or to any other dialysis facility or hospital.

3. Until December 11, 2009, Dr. Stephen Cooksey will not make any use for his own benefit, or for the benefit of any person, firm, corporation or other entity, or disclose to any person, firm, corporation or other entity, any secret or confidential information, patient lists or any other data or proprietary information of, or pertaining to, the Dialysis Clinic Inc. ("DCI") dialysis facilities located at 7620 Meade Street, Pittsburg, Pennsylvania and 613 East Pittsburg-McKeesport Boulevard, North Versailles, Pennsylvania ("Cooksey Facilities") or to their business and financial affairs or services to the extent acquired by him at any time during the tern of his engagement by DCI as a Medical Director and not generally known within the trade or as a matter of public knowledge. Dr. Cooksey also represents that he has not previously engaged in such conduct other than for the benefit of or to DCI.

4. Until December 11, 2009, Dr. Stephen Cooksey will also not, alone or as a member of a partnership, or as a stockholder, principal, member or agent of any corporation, partnership, joint venture, person or entity; (i) directly or indirectly, participate in the ownership, management, operation or control of other outpatient renal dialysis facilities within a twenty-five (25) mile radius of the location of the Cooksey Facilities; (ii) serve as Medical Director or hold a management position with another corporation, partnership, person or entity offering services which are competitive with those offered by DCI within a twenty-five (25) mile radius of the location of the Cooksey Facilities; (iii) influence or attempt to influence any of the suppliers from which DCI, directly or indirectly, purchases goods or services to alter or terminate their business relationship with DCI; (iv) hire or solicit to hire any of the Cooksey Facilities or DCI's employees or influence or attempt to influence any of the Cooksey Facilities or DCI's employees

to alter or terminate their employment relationship with the Cooksey Facilities or DCI; or (v) in any other manner interfere with, disrupt or attempt to disrupt the relationship between the Cooksey Facilities or DCI and any of its employees or suppliers. Dr. Cooksey also represents that he has not previously engaged in such conduct. The parties acknowledge that the foregoing is not intended in any way to limit Dr. Cooksey from engaging in the professional practice of medicine or nephrology, nor is it intended to require that Dr. Cooksey admit patients to the Cooksey Facilities or restrict Dr. Cooksey from admitting patients to any other dialysis facility or hospital, nor is it intended to prohibit or in any way otherwise limit Dr. Cooksey from charging fees for administering professional medical services to patients admitted to the Cooksey Facilities or to any other dialysis facility or hospital.

5. Until December 11, 2009, Dr. David J. Levenson will not make any use for his own benefit, or for the benefit of any person, firm, corporation or other entity, or disclose to any person, firm, corporation or other entity, any secret or confidential information, patient lists or any other data or proprietary information of, or pertaining to, the Dialysis Clinic Inc. ("DCI") dialysis facility located at 715 Freeport Road, Cheswick, Pennsylvania ("Levenson Facility") to its business and financial affairs or services to the extent acquired by him at any time during the term of his engagement by DCI as a Medical Director and not generally known within the trade or as a matter of public knowledge. Dr. Levenson also represents that he has not previously engaged in such conduct other than for the benefit of or to DCI.

6. Until December 11, 2009, Dr. David J. Levenson will also not, alone or as a member of a partnership, or as a stockholder, principal, member or agent of any corporation, partnership, joint venture, person or entity: (i) directly or indirectly, participate in the ownership, management, operation or control of another outpatient renal dialysis facility within a twenty-

five (25) mile radius of the location of the Levenson Facility; (ii) serve as Medical Director or hold a management position with another corporation, partnership, person or entity offering services which are competitive with those offered by DCI within a twenty-five (25) mile radius of the location of the Levenson Facility; (ii) influence or attempt to influence any of the suppliers from which DCI directly or indirectly, purchases goods or services to alter or terminate their employment relationship with DCI; (iv) hire or solicit to hire any of the Levenson Facility's or DCI's employees or influence or attempt to influence any of the Levenson Facility's or DCI's employees to alter or terminate their employment relationship with the Levenson Facility or DCI; or (v) in any other manner interfere with, disrupt or attempt to disrupt the relationship between the Levenson Facility or DCI and any of its employees or suppliers. Dr. Levenson also represents that he has not previously engaged in such conduct. The parties acknowledge that the foregoing is not intended to in any way limit Dr. Levenson from engaging in the professional practice of medicine or nephrology, nor is it intended to require that Dr. Levenson admit patients to the Levenson Facility or restrict Dr. Levenson from admitting patients to any other dialysis facility or hospital, nor is it intended to prohibit or in any way otherwise limit Dr. Levenson from charging fees for administering professional medical services to patients admitted to the Levenson Facility or to any other dialysis facility or hospital.

7. Until December 11, 2009, Dr. James Weiss will not make any use for his own benefit; or for the benefit of any person, firm, corporation or other entity, or disclose to any person, firm, corporation or other entity, any secret or confidential information, patient lists or any other data or proprietary information of, or pertaining to the Dialysis Clinic Inc. ("DCI") dialysis facilities located at 4455 Old Penn Highway, Monroe, Pennsylvania and 2534 Monroeville Boulevard, Monroeville, Pennsylvania ("Weiss Facilities") or to its business and

financial affairs or services to the extent acquired by him at any time during the term of his engagement by DCI as a Medical Director and not generally known within the trade or as a matter of public knowledge. Dr. Weiss also represents that he has not previously engaged in such conduct other than for the benefit of or to DCI.

8. Until December 11, 2009, Dr. James Weiss will also not, alone or as a member of a partnership, or as a stockholder, principal, member or agent of any corporation, partnership, joint venture, person or entity: (i) directly or indirectly, participate in the ownership, management, operation or control of another outpatient renal dialysis within a twenty-five (25) mile radius of the location of the Weiss Facilities, (ii) serve as Medical Director or hold a management position with another corporation, partnership, person or entity offering services which are competitive with those offered by DCI within a twenty-five (25) mile radius of the location of the Weiss Facilities; (iii) influence or attempt to influence any of the suppliers from which DCI, directly or indirectly, purchases goods or services or to alter or terminate their business relationship with DCI; (iv) hire or solicit to hire any of the Weiss Facilities' or DCI's employees or influence or attempt to influence any of the Weiss Facilities' or DCI's employees or to alter or terminate their employment relationship with the Weiss Facilities or DCI; or (v) in any other manner interfere with, disrupt or attempt to disrupt the relationship between the Weiss Facilities or DCI and/or its employees or suppliers. Dr. Weiss also represents that he has not previously engaged in such conduct. The parties acknowledge that the foregoing is not intended to in any way limit Dr. Weiss from engaging in the professional practice of medicine or nephrology, nor is it intended to require that Dr. Weiss admit patients to the Weiss Facilities or restrict Dr. Weiss from admitting patients to any other dialysis facility or hospital, nor is it intended to prohibit or in any way otherwise limit Dr. Weiss from charging fees for

6
Case 3:07-cv-00838    Document 86-1    Filed 11/23/2009    Page 6 of 8
Case 3:07-cv-00838   Document 89   Filed 11/24/09   Page 6 of 7 PageID #: 727

administering professional medical services to patients admitted to the Weiss Facilities or to any other dialysis facility or hospital.

The injunction shall constitute the final judgment of the Court in this case. Each party shall bear their own costs.

Entered this the 20th day of November, 2009.

William J. Hayes, Jr.
United States District Court

Agreed upon and submitted for entry by:

s/ Donna L. Roberts
Stephen H. Price
Donna L. Roberts
STITES & HARBISON, PLLC
401 Commerce Street, Suite 800
Nashville, TN 37219
Telephone: (615) 244-5200
Stephen.Price@stites.com
Donna.Roberts@stites.com
Counsel for Plaintiff, DIALYSIS CLINIC, INC.

s/ James V. Corbelli
James V. Corbelli
Babst, Calland, Clements & Zomnir, P.C.
Two Gateway Center, 8th Floor
Pittsburgh, PA 15222
Telephone: (412) 394-5649
jcorbelli@bccz.com

John E. Anderson, Sr.
Dickinson Wright PLLC
424 Church Street, Suite 1401
Nashville, TN 37219-2392
(615)244-6538
janderson@dickinsonwright.com
Counsel for Defendants